May it please the court. My name is James Beck. I'm along with Eric Gilman. We represent the appellant, Keith Jackson. I'd like to reserve two minutes for rebuttal. Was he serving in Iraq regardless, and the question was whether he'd be in the military or for a private contractor? So it's really a difference in pay rather than where he is and how dangerous it is? I'm not sure I understand exactly the question. His motivations behind contesting this? No, the remedy. The remedy. Or is it a damages case? This is a damages case. And are the damages the difference in pay? The damages would be the consequential damages that he suffered as a result of having to go through the system and contest this. And what would those be? Attorney's fees, for one thing. Also, emotional distress damages. This is a tort claim and constitutional claims as well. This is a very frustrating thing for this individual to have to go through. This is a man who had served in the military from right out of high school through this event. And so at the end of his career, being faced with threats of court-martials and such, it wasn't taken lightly. And so the damages component, I mean, what the damages are, I'm not here to lead the court on to believe this is a multimillion-dollar lawsuit, but it doesn't need to be. I was trying to find out what they were. They weren't developed. Because this case was dismissed on a motion to dismiss for subject matter of jurisdiction. Your guy was in the ready reserve at the time he, all this allegedly happened? He was, Your Honor. And so what this really comes into focus, I think the first question is in the Zapatil case, which the court below found dispositive. The core question is, is it dispositive or is it distinguished? And I will readily agree that the majority of the facts as far as the claims that are alleged and the posture of his duty status are analogous to the plaintiff in that case. But there's one critical distinction. We're talking about whether it is a transfer within somebody's military service obligations versus the action that brings somebody under military control, a threshold situation. This court in Johnson, reiterating what the Ferris Court and many Supreme Court decisions have said, is that for Ferris to apply, to borrow a claim, the action must be incident to someone's military service. And in a case like this, it has nothing to do with his military service. It could have been me. It could have been you. No, well, if it had been me and you, we're not in the military. But as far as whether or not... Your guy is in the military. This is correct. And that's one of the underpinnings of Ferris is you don't want military people suing other military people about military things. If it happened to me, I'd have a case. If it happened to you, you'd have a case. If it happens to some guy who's in the reserve, you don't have a case. He was in the Red Reserve, but this entire incident had absolutely nothing to do with his status as a Red Reserve, did it? Correct, Your Honor. And that was the point I was trying maybe inarticulately to make is that he was a member of the Red Reserve, but whether he was enlisted on June 24, 2006 had absolutely nothing to do with his status as military. But whatever his status is, he has other remedies which he was able to pursue and did successfully pursue. Well, he did not. He did pursue them. He wasn't successful in those remedies. His remedy was to go into court just like any civilian would and file a declaratory judgment action. Which he did and prevailed. That's how he got an honorable discharge. That is part of the settlement of that claim. He showed that the military was wrong. They gave him an honorable discharge. But his remedies weren't any different than the remedies of a civilian who was not in the Red Reserve, right? In other words, his remedies for being wrongfully re-enlisted is the same as it would be for a civilian. That is the question before the court because what the lower court said was that they're not, that he does not have access to file any type of claim for damages. If you were a civilian, you would. No, I'm talking about the remedies that he did get. In other words, he was eventually discharged, right? That's correct. Because, I don't know, I suppose they figured there was a mistake made. But what he got was nothing more than a civilian would have gotten, right? No, the remedies he got, no, Judge Silverman, Judge Kleinfeld is saying, well, he had access to all these remedies. But he didn't have access to these remedies because he was already reservist. It was no different than the remedies a civilian would have had access to for being wrongfully enlisted. That's correct. So I don't understand what Ferris has to do with this. And, Your Honor, if we go back and say Ferris from 1950 on has had its turns, it's grown, it's been criticized by this court. One of the things this court has been strong about doing and applying are factors so that it's not an ad hoc application of how this doctrine is going to be applied. And there's four of them. This court's applied those factors in non-injury cases, such as in Hodge where it was a Title VII type claim, and it still went through these Johnson factors. If you apply them, none of them support the application of Ferris in this case. Counsel, I'm actually quite sympathetic to your view. I had always understood Ferris before this case as meaning veterans don't get to bring tort suits, they get veterans' disability claims. And that's the core of Ferris. You jump off the truck with your 70-pound pack and it hurts your back, you don't get to sue the sergeant for giving you a stupid order, you get a veterans' disability rating. However, we're bound by Zaputo v. Cowgill, and in that case we held that Ferris bars a military reservist who was in the reserves, having been discharged from the National Guard from suing for damages, for wrongly revoking her discharge and ordering her back to active duty. I am not clear yet on precisely how you think we should distinguish and why you think we should distinguish Zaputo. And I think that's probably the most pointed part of this case. That's why I asked it. That's what's bothering me. So you've got a difference of someone having an honorable discharge revocation occur. So this is something that's occurring within the scope of their military service. You're talking about Zaputo now. Correct. Those are the facts of that case. What you have here is the threshold circumstance. Now, if you go and look at the factors and consider whether this could have happened to someone on the street, the situation in Zaputo wouldn't have because there's no discharge circumstance to revoke. However, in this case, when we're talking about an enlistment, the enlistment is the gateway into the entire military service. So if you're going to immunize these individuals for that type of conduct, then there's really no incentive personally to them. And look at the facts of this case. Wait a minute. Maybe this could involve a civilian. Recruiters could get their quota met by just falsifying a recruitment of some high school kid. But it didn't happen to a civilian. It happened to somebody in the reserve. So why doesn't that make Zaputo applicable? What policy behind Ferris when we're thinking about the core question for Zaputo? I'm not too clear on whether there's a good policy for the result that's been reached so far in this case. But I'm still troubled because it looks like Zaputo covers it. The difference is a discharge revocation on the back end of somebody's service obligation versus initiating a new obligation through outright fraud. And whether or not any of the doctrines behind it, this is a judicially created doctrine that the court has created and guided. And what policy behind it is served by immunizing these individuals? This isn't a case against the United States. It's not a case against the state of Washington. It's against two individuals who committed fraud and under color state law committed certain constitutional torts. So having the Zaputo situation, which was a lateral movement within somebody's service obligations, is distinct. And I hope I've impressed that point because I think this is the distinction versus the gateway threshold application of enlisting someone in the military. This court should not give greater protections to the kid in high school who's defrauded into the military than they would to someone like Keith Jackson. Thank you. I'll reserve the rest of the time. Thank you. Thank you very much, Mr. Benton. Good morning, Your Honor. My name is Michael Diaz. I'm an AUSA in this district, and I represent the appellees in this matter. May it please the court. Our position is pretty straightforward, and I think Your Honors have grasped our position in anticipation. The court has consistently said for the past 20 years that the, quote, most appropriate way to resolve Ferris doctrine cases is to look at the, quote, most factually analogous case. And as our briefing says and as you guys have discussed, Zupatel, we believe, is a decision on all fours. I'd like to address just a couple of points that. I really am troubled by stretching Ferris to this, as I mentioned to your colleague. Ferris says it's kind of the military equivalent of workers' comp. Workers' comp is your exclusive remedy if you get hurt on the job, you don't get to sue your boss.  You don't get to sue your boss for his negligence. Here, once you're in the reserves, the injury that happened to him is not an ordinary injury incidental to being in the reserves. False papers signing you up for active duty are not the type of injury and they're not a consequence of being in the reserves. It's a stretch to apply Ferris to it. Our position, Your Honor, is that Ferris is, as this Court has reluctantly acknowledged before, a very broad doctrine. It's intended to cover – there's one overarching standard, which is whether the service member's suit arose out of or was incident to the service. Otherwise, it need only be service-related. In Zupatel... Incident to whose service? Incident to the military member's service. Who's the military member here? The plaintiff, the appellant. This is not incident to the plaintiff's service, is it? Well, the concept is whether it's service-related in the words of the judge. Well, you said incident to the plaintiff's service. It is not incident. Do you agree with that, to the plaintiff's service? Because he wasn't serving at that time except in the ready reserve. The ready reserve says no service obligation except to be recalled as a ready reservist, right? That's the only obligation a ready reservist has. Isn't that true? There are a couple of points here. Unless the ready reservist is recalled, there's no obligation, military obligation at all. Do you agree with that? I don't, Your Honor. Well, what obligations does a ready reservist have then? The ready reservist has several obligations, some of which... Such as? ...such as he can be called involuntary. That's what I said. He can be recalled. That's number one. But he wasn't being recalled here. Correct, Your Honor. He must be screened and must report... And he wasn't being screened and being reported. Correct. So in the sense that the allegedly fraudulent activity here was not related to one of those activities. It wasn't related to... So it's not incident to his service. But the concept here, Your Honor, respectfully, is a little... Well, my question is, is it incident to his service? The answer has to be no, doesn't it? I don't believe so, Your Honor. There are a couple of different concepts. Incident to service... Well, you still have an extenuating cause incident to service. We went through every service obligation a ready reservist had, and you said it's not incident to any of those. Then how is it incident to his service as a ready reservist? I think there are two concepts that need to be distinguished. One, I think what is troubling, Your Honor, is that whether it's directly related to one of those four activities. But there's a more general concept, and that's the breadth that the Ferris Doctrine is meant to encompass, which is whether or not it's service-related. In Hodge, this Court held that whenever a legal action requires a civilian court to examine decisions regarding management, discipline, supervision, and control of members of the armed forces, then it runs the risk of colliding with Ferris. It's a much broader concept, I think, than just... It has nothing to do with any of those with respect to the plaintiff, does it? It does, Your Honor, respectfully. I believe it relates to the control aspect here. The control of the plaintiff? Control of the... But that control is not any different than control over any other civilian. It is, Your Honor. I think the key distinction, and the distinction that this Court drew rightly in Zupatel, was that this plaintiff, or the plaintiff Zupatel there, was within the sphere of the military still. It wasn't, as Plaintiff, as Appellant's Counsel just described, this wasn't a transfer. It wasn't a lateral movement. Not exactly. Reserves aren't in the military. They can just be brought in, and they're civilians at that point. They've been discharged. They've been discharged. That is true. Just like in Zupatel. Zupatel wasn't transferred. Well, Zupatel's a little different. What was wrong there wasn't an enlistment being fraudulent. What was wrong was her discharge was revoked. Now, the discharge, whether a person should be discharged at all, and whether it's honorable or dishonorable, or they have one or two in between, I can't remember the exact words. It's a military function to determine whether a soldier is discharged and what the terms of the discharge are. And that is where the mistake was made in Zupatel. This case, the discharge is unquestioned. All that's at issue is the enlistment. Why isn't that a distinction? For us, Your Honor, it's a distinction without a formal difference. It's more form over substance. The discharge, it was a discharge in Zupatel. It was revoked. The revocation brought Plaintiff Zupatel back into the control of the military. Here you have an allegedly, allegedly, Your Honor, fraudulent re-enlistment. You keep trying to throw doubt on whether the facts are as the complaint states, but I don't think that matters at all since it's dismissal on the complaint. I completely agree, Your Honor. We're taking all the allegations of the plaintiff as true for purposes of this case. So it was a fraudulent re-up. Fraudulent re-up. In Zupatel, it was, first of all, Zupatel rejected the distinction between whether something was unlawful and lawful. The court stated. Okay. Let's say it wasn't a fraudulent re-up. I don't think it matters. Let's suppose it was just they did the papers for the wrong guy. Correct. And the Zupatel court expressly rejected that as a distinction as well. It held that there are no civil damages, even if the military decision was indisputably erroneous, wrongful, and valid. Okay. But it's still the enlistment decision, not the revocation? Correct. The revocation, Zupatel. I thought Zupatel was just about a revocation and not an enlistment. That's why I asked you that. Oh, I'm sorry. Correct. It was a revocation. It was a revocation. But the way we view the matter is that whether it's a revocation or whether it's an allegedly fraudulent re-enlistment, that's a distinction without a difference for purposes of fair law. Well, but except as Judge Kleinfeld says, the plaintiff there was in the military. Right? I mean, we're talking about, you know, whether the discharge was any good or not. So it had to be in the military. And here, I think for all practical purposes, the plaintiff was not in the military. Isn't that a difference in the two cases? Your Honor, in Zupatel, Zupatel was herself discharged formally. And the question, was the discharge any good? Correct. And you can't question that because she's in the military. But at the time of her discharge, she was no longer in the military. No, that was the issue, wasn't it? That was the allegation that the discharge was the revocation of the discharge was improper. Right. Let me ask you, do you think it makes any difference here that the district court denied the Westfall certification? We believe, as we've briefed, that Westfall certification was improper. But we don't believe you need to reach that issue because the first thing Well, the reason I'm asking is if it were proper, then that means the defendant was not acting in the scope of employment. Right? Actually, Your Honor, there are a couple of different errors that we believe, respectfully, the district court made. The first thing I know you said you don't agree with the district court. But nonetheless, that was a district court decision. District court refused to grant Westfall certification, right? Not exactly, Your Honor. Exactly? It didn't find that Mr. Jackson was outside the scope of his employment. It found under 28 U.S.C. 2671 that he wasn't a federal employee. It never actually reached the substantive analysis of whether or not scope was So if he's not a federal employee, doesn't bind the United States, doesn't that have something to do with whether or not the Ferris Doctrine is even implicated? It doesn't, Your Honor. Even assuming that he was a National Guardsman and a state actor here, the Ferris Doctrine, again, its breadth covers state actors when they are participating in military activities incident to service. Incident to what service? National Guard service or federal service? That's not a distinction the case law makes any longer. There's no distinction between the National Guard being called by the governor to act in some state emergency to a National Guard service incident to a National Guard being called by the president to go to Afghanistan? Those are the same? No, there may be differences in that circumstance. For purposes here of recruiting, ordering, supervising, organizing, administrating, recruiting functions, which is the language of the Army regulations and the statutes, there's no difference between the two. Let me ask you the question that Judge Desheen was asking before that is bothering me too. If these defendants just pulled some Joe off the street and signed his name, forged his name to some enlistment papers, that person would have a cause of action against the people who did that, right? He would, Your Honor. And the only reason this guy doesn't have a cause of action is because he's in the ready reserve? That is the crux of the Zupatel case. We believe that the proper analysis, again, is to look at the most analogous case, which is Zupatel. If you're uncomfortable with that, you look at the factors. And the duty status is not – there are a couple of different standards that have been used. There's one – the more nuanced approach is the one in the Jackson Court, Ninth Circuit has used, where there are two extremes. You have active duty, no doubt, guy jumping off the back of a truck. On the other extreme, you have the civilian off the street, the Shanghai, gets Shanghai'd off the street. In those, there are two extremes, and that factor can weigh heavily for one or the other. But most cases that the Jackson Court held are more or less in the middle. And in this case, it weighs in favor of application of fares because Mr. Jackson had a military obligation. If you'll indulge me one other second, there's a slippery slope of the Shanghai concern, but from the military's perspective, there's also a real slippery slope of making all reenlistment activities subject to a tort claim. Enlistment and reenlistment is a fundamental function of the Army, Your Honor. There is no Army without recruiting activity. Why would we have a policy in favor of fraudulent enlistments? We don't, Your Honor, but if we were to give every time someone wants to get out of a commitment, I'm not saying that's the facts here, Your Honor. I'm just saying every time somebody wants to get out of a commitment, all they would have to do is allege a tort claim. That would provide the type of disincentives, the type of civilian court interference. So that would cover even the case that I talked about a second ago, the Shanghai case? The Shanghai case, Your Honor, again, is one extreme of this. Okay, I think you're out of time. Thank you, Mr. Diaz. Thank you very much, Your Honor. No, Judge Kleinfeld has another question. Excuse me. I have a question about the Westfall issue. Ordinarily, the way Westfall certifications work is John does Richard Rowe. The U.S. attorney files a paper saying Richard Rowe is a federal employee acting in the course of his duties as a federal employee, so the United States should be substituted as defendant for Richard Rowe, and that's done. Correct. It's kind of analogous to when an insurance company affords coverage. It's unambiguous. They're going to cover up to their policy limit. Here, when I read the Westfall certification, it did not look like a typical Westfall certification. It looked like you couldn't tell whether the United States would pay whatever damages were awarded until the case was over. In such a case, it's like an insurance company that says that defends under reservation of rights. You don't know if they're going to pay or not until you see how the case goes. As I read the Westfall body of law, that's not good enough. It's not a good enough certification. And I think that's what troubled the district judge. He looked at it and, gee, it doesn't look like a Westfall certification. Yeah. Well, the district judge actually, to answer that portion of the question first, the district judge didn't actually go deep enough into the proper legal analysis on 502F. Okay. Why is this a good Westfall certification? So here, the Westfall certification, you described the process exactly. The only portion I'd like to clarify is that the U.S. attorney, who's the designee of the attorney general, has the option to reevaluate a Westfall certification and can retract it. At that point, the employee has the opportunity to ask a district court judge to evaluate his Westfall request. That hasn't happened here, so I don't think it matters. What happened here is a Westfall certification was filed, but I can't tell from the certification whether the federal government is going to pay the money if money is awarded. We believe that the Westfall certification, which I don't believe is any different from the standard certifications we've used in all other cases in this district, has... Maybe you're using the wrong form in your district. I never saw one like that in my district. Well, be that as it may, the problem that Judge Lasnik had with it was that these people are not federal employees, that whatever other defects here may or may not be in the papers. Exactly, Your Honor. I mean, there are two issues, again, the federal employee issue and then there's the Westfall scope issue. And whether or not it was the right form, I believe it was the intent of the government. Did the government undertake to pay the money if money was awarded? Yes. It intended to step in the shoes of Mr. Tate and Mr. Decoto for common law state court claims. That was the intent of the Westfall scope certification. And does it say that? I believe it does, but, again, we can reevaluate that. I'm certain that that was the intent of the... And that's what was represented in the briefing before the district court as well. Thank you very much, Mr. D. Thank you very much. Mr. Beck, back to you. Thank you, Your Honor. You've got about a minute left. I want to focus on this one Jackson or Johnson factor that we were talking about, duty status, because it seems like that's the question. Zapotil was wrapped around the fact that she was in the individual ready reserve and so was Jackson. So this court is, if you're analyzing that factor on this continuum that opposing counsel described, the continuum really is an active military member to an inactive reservist. Because if you take one step further on the continuum, as we all have agreed today, Ferris could never apply because you wouldn't be under any military service obligations. So considering that Jackson is the far end of the continuum on the duty factor, that shouldn't be a basis to apply this. As far as the slippery slope argument, the court can know the lack of opinions in this country on this issue throughout the course. I don't think that this is a circumstance where you're going to see individuals running out unless there's really good facts to support it like there are in this case. Thank you. Thank you, Mr. Beck. The case just argued is submitted. Good morning, gentlemen. Thank you.
judges: Kleinfeld, Tashima, Silverman